UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMES MICHAEL DAYSON,

        Petitioner,        Case No. 2:14-cv-65

v.        Honorable R. ALLAN EDGAR

DUNCAN MACLAREN,

        Respondent.
_____/

**MEMORANDUM AND ORDER**

Petitioner James Michael Dayson, filed this petition for writ of habeas corpus challenging his jury conviction for two counts of first-degree home invasion, two counts of breaking and entering a building with intent to commit a larceny, breaking and entering a motor vehicle to steal property with a value less than $200, unlawful driving away an automobile, attempted breaking and entering of a vehicle causing damage, and two counts of assault and battery. Petitioner is currently serving 14 to 30 year terms of imprisonment on each first-degree home invasion conviction, 7 to 15 year terms of imprisonment on each breaking and entering conviction, a 4 to 15 year term of imprisonment on his unlawful driving away of an automobile conviction, a 2 to 15 year term of imprisonment on his conviction for attempted breaking and entering a vehicle, a 93 day jail sentence for breaking and entering a vehicle to steal property, and 93 day jail sentences for each of his assault and battery convictions. The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision.

The Michigan Court of Appeals set forth the facts as follows:

At approximately 1:30 a.m. on the morning of Sunday, April 13, 2008, defendant went to the home of the Winchester family on Dutch Settlement Road in rural Cassopolis, Michigan. Between 3:30 a.m. and 4:30 a.m. that same morning, he went to the nearby home of Terry Elrod and drove off with Elrod's truck. From there, defendant drove to the home of Michael Anders, and he removed several compact discs (CDs) from inside the glove box of Anders' Ford Explorer, leaving several of them inside and next to the vehicle. Defendant also pulled off the rear driver's side handle of a Pontiac Grand Prix owned by Anders' daughter, which was parked in Anders' driveway next to the Explorer, and he broke into Anders' garage, where defendant removed two rototillers and a gas can to the yard outside. At some point, defendant put a key in the ignition of a tractor inside the garage, which he left in the "on" position, killing the engine. From there, defendant went across the street onto property owned by Garret Metz, where he left approximately ten of Anders' CDs strewn about the yard. He also entered Metz's Ford Taurus and scattered throughout the vehicle numerous documents and paperwork. Defendant also tore down the door to a nearby pole barn so that it hung by a single hinge, and he left documents scattered inside. Defendant additionally entered Metz's garage, attached to the lower level of his home, and then he entered the home itself. Next, defendant drove to the home of Steven Pease and Daniel Paulos. At approximately 6:30 a.m., he kicked open their front door and entered their living room. The startled Pease and Paulos ascended from the basement and encountered defendant, who growled at them and raised his arms in the air. Defendant then engaged in a physical fight with Paulos. During the altercation, Pease hit defendant approximately 12 times with a large piece of hardwood flooring, but defendant continued to assault Paulos. Eventually, the fight between Paulos and defendant carried into the basement, at which point Pease contacted the authorities and opened an exterior door. Defendant then ran up the stairs and out of the house. Road Patrol Sergeant Todd McMichael of the Cass County Sheriff's Department was dispatched to the home. He thereafter learned that an officer with the Dowagiac Police Department had detained defendant. Cass County Sheriff's Deputy Al Strukel later drove Pease and Paulos to the scene of defendant's detainment. Once there, both men identified defendant as the perpetrator. McMichael also reported to the scene and had defendant admitted to a hospital for treatment of his bloody head. He arrested defendant before his release at which point McMichael searched defendant and found a crack pipe in his pocket, along with a key to Anders' garage door.

*People v. Dayson*, No. 291702 (Mich. App., Sept. 21, 2010) ECF No. 7-18, Page ID.1158-1159.

Petitioner asserts:

I. Ineffective assistance of counsel for failing to file a motion to preserve the evidence, failing to file a motion to compel discovery, failing to interview government witnesses, failing to prepare for trial, failing to show Petitioner the evidence that the government intended to introduce at trial, failing to file a motion to exclude the crack pipe from entering into evidence at trial, failing to inform the jury that Petitioner did not have cocaine in his vascular system, failing to submit a hair sample for drug analysis to prove Petitioner did not use cocaine prior to the incident, failing to interview Petitioner's witnesses, failing to present a substantial defense, failing to file a witness list, failing to request jury instructions, and for presenting a voluntary intoxication defense when the Michigan Legislature abolished the defense nearly five years prior to trial.

II. Prosecutorial misconduct for failing to provide items in Petitioner's discovery request, and for allowing the Cass County Sheriff's Department to destroy evidence of Stephen Pease's 911 call and the audio and video recordings from the police vehicles.

III. Ineffective assistance of counsel for not investigating Petitioner's history of sleepwalking.

IV. A violation of the Eighth Amendment due to the state preventing Petitioner from asserting a sleep walking defense and then sentencing him when he had no criminal intent.

V. Ineffective assistance of appellate counsel.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination

of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). The Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Respondent argues that several claims asserted by Petitioner in his amended complaint are time barred. A one year period of limitation for filing a petition of habeas corpus runs from the date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking such review, the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review, or the date on which the factual predicate of the petitioner's claim could have been discovered through the exercise of reasonable diligence. 28 U.S.C. § 2244(d)(1). However, the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. 28 U.S.C. § 2244(d)(2). Respondent argues that Petitioner's new claims first asserted in his amended petition do not relate back to the original claims. In *Mayle v. Felix*, 545 U.S. 644, 655 (2005), the Supreme Court held that an amended complaint filed in a federal habeas proceeding that adds new

claims that do not arise out of the same conduct, transaction or occurrence will not relate back to the original petition filing date for statute of limitations purposes. The Supreme Court explained that

> Congress enacted the AEDPA to advance the finality of criminal convictions. See *Rhines v. Weber*, 544 U.S. 269, 276 (2005). To that end, it adopted a tight time line, a one-year limitation period ordinarily running from the "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," 28 U.S.C. §2244(d)(1)(A). If claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitations period would have slim significance.

*Id.* at 662.

Petitioner raised new claims in his amended petition that do not arise out of the same conduct, transaction or occurrence of the claims that he asserted in his original petition. Some of Petitioner's claims in his amended petition restate the claims previously raised in the original petition. Those restated claims may proceed in this action. In Petitioner's amended petition he raised multiple ineffective assistance of counsel claims. The only ineffective assistance of counsel claim that relates back to Petitioner's original petition asserts the alleged failure by counsel to inform the prosecutor, court, and jury that Petitioner did not have cocaine in his system. In his amended Petition, Petitioner raised one prosecutorial misconduct claim that relates to his original petition involving the destruction of audio and video recordings, which allegedly would have established that Sergeant Todd McMichael did not take a key from Petitioner in contradiction of Sergeant McMichael's trial testimony. Petitioner's claim of ineffective assistance of counsel for counsel's failure to investigate Petitioner's history of sleepwalking relates back to the amended petition. Petitioner's claim that his Eighth Amendment rights were violated because he was convicted and sentenced for acts that he performed while sleepwalking relates back to the original Petition.

Petitioner's remaining claims asserted in his amended petition are new claims that do not relate back to the original petition.

Petitioner filed this petition on March 18, 2014, which was more than one week after the statute of limitations period expired on March 10, 2014. This court gave Petitioner the benefit of the doubt and ruled that the original petition was timely in an Order and Opinion granting Petitioner relief from judgment because Petitioner had filed this petition within eight days after he received the denial of his application for leave to appeal from the Michigan Supreme Court opinion. ECF No. 16, PageID.1891-1892. Although, technically outside the statute of limitations period, this court determined that Petitioner was pursuing his rights diligently and concluded that the petition was timely filed. The court cannot conclude that the new claims asserted in the amended petition were timely filed since those claims do not arise out of the same conduct, transaction or occurrence of the claims that Petitioner made in his original petition. Accordingly, Petitioner's new claims are time barred.

Petitioner argues that his trial counsel was ineffective for failing to inform the court and jury that Petitioner did not have cocaine in his system at the time of the acts that lead to the criminal charges, and because counsel failed to investigate a sleep walking defense. Petitioner's ineffective assistance of counsel claims were first presented in his motion for relief from judgment, which was denied in the state courts. The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge

a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

    Petitioner argues that his counsel should have presented evidence that he did not have cocaine in his system at the time he committed the crimes. Petitioner asserts that a toxicology report indicated that Petitioner tested negative for cocaine on April 13, 2016, the night of the crime. PageID.1867. The toxicology report also indicated a positive result for Cannabinoids in Petitioner's system, which shows that Petitioner had used marijuana. Therefore, it was reasonable for counsel not to want that report entered into evidence. Moreover, counsel was able to cross-examine officer McMichael. Counsel attempted to get officer McMichael to admit that testing established that there was no cocaine, but the court sustained the prosecutor's hearsay objection. PageID.553-554. Officer McMichael further testified that he did not test the pipe for cocaine or have the pipe tested for cocaine. PageID.556. During cross examination officer McMichael admitted that he had no proof that cocaine was on the pipe or that the pipe was used for cocaine. PageID.559-560. Further, the court sustained defense counsel's objection to the pipe being referred to by the prosecution as a "crack pipe." PageID.561. The tactics used by defense counsel prevented the toxicology report from being entered into evidence, which would have shown that Petitioner was under the influence of

marijuana. At the same time, defense counsel was able to establish that Petitioner was never shown to have been under the influence of cocaine by effective cross-examination of officer McMichael. Petitioner simply cannot show that his counsel erred on this point.

Petitioner claims that counsel was ineffective for failing to investigate the defense of sleep walking. It is well established that "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. The duty to investigate derives from counsel's basic function, which is "'to make the adversarial testing process work in the particular case.'" *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986) (quoting *Strickland,* 466 U.S. at 690). This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); accord *Clinkscale v. Carter*, 375 F.3d 430, 443 (6th Cir. 2004). A purportedly strategic decision is not objectively reasonable "when the attorney has failed to investigate his options and make a reasonable choice between them." *Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir.1991) (cited in *Combs v. Coyle*, 205 F.3d 269, 288 (6th Cir. 2000)).

Courts have not hesitated to find ineffective assistance in violation of the Sixth Amendment when counsel fails to conduct a reasonable investigation into one or more aspects of the case and when that failure prejudices his or her client. For example, in *Wiggins v. Smith*, 539 U.S. 510, 524-29 (2003), the Supreme Court held that the petitioner was entitled to a writ of habeas corpus because his counsel had failed to conduct a reasonable investigation into potentially

mitigating evidence with respect to sentencing. *Id.* According to the Court, "counsel chose to abandon their investigation at an unreasonable juncture, making a fully informed decision with respect to sentence strategy impossible." *Id.* at 527-28. Consistent with *Wiggins*, the Sixth Circuit has held, in a variety of situations, that counsel's failure to investigate constituted ineffective assistance in violation of the Sixth Amendment. *See, e.g., Towns*, 395 F.3d at 258-59. (holding that defense counsel's failure to investigate potentially important witness in robbery and felony murder trial was unreasonable, and thus constituted ineffective assistance, in violation of Sixth Amendment); *Combs*, 205 F.3d at 287-88 (holding that defense counsel was constitutionally ineffective for failing to investigate adequately his own expert witness, who testified that, despite the defendant's intoxication at the time of the crime, the defendant nevertheless was capable of forming the requisite intent to commit the crimes); *Sims v. Livesay*, 970 F.2d 1575, 1580-81 (6th Cir. 1992) (holding that counsel was constitutionally ineffective for failing to conduct an investigation into certain physical evidence that would have undermined the prosecution's theory that the victim was shot at a distance); *Blackburn v. Foltz*, 828 F.2d 1177, 1183 (6th Cir. 1987) (holding that counsel's failure "to investigate a known and potentially important alibi witness" constituted ineffective assistance because "[c]ounsel did not make any attempt to investigate this known lead, nor did he even make a reasoned professional judgment that for some reason investigation was not necessary"); *see also Clinkscale*, 375 F.3d at 443 (collecting cases in which counsel's failure to investigate a potentially important witness constituted ineffective assistance).

Petitioner asserts that his defense counsel should have presented a defense that Petitioner was sleepwalking at the time he committed the criminal actions. Petitioner has set forth no factual evidence showing that this defense had merit. Petitioner has speculated that someone may have drugged him, causing him to enter into a deep sleep. Petitioner claims that when he enters a

deep sleep cycle, he has a history of sleep walking. This is at best a speculative argument not based on any factual supporting evidence. Petitioner has not established that his counsel erred in failing to assert a sleep walking defense. Petitioner cannot show that the Michigan Courts' decisions denying his ineffective assistance of counsel claims were unreasonable.

Petitioner argues that the prosecutor committed misconduct by not producing the audio and video recordings from the police vehicles and the recording of the 911 call. The Michigan Courts denied these claims when Petitioner asserted them in his motion for relief from judgment. Misconduct by a prosecutor can rise to the level of a due process violation. *Lundy v. Campbell*, 888 F.2d 467, 474 (6th Cir. 1989). However, before habeas corpus relief becomes available, the misconduct must be so egregious as to deny petitioner a fundamentally fair trial. *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1355 (6th Cir.1993). The habeas court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental. *See United States v. Young*, 470 U.S. 1, 11-12 (1985). In addition, the court may view any misconduct in light of the strength of the competent proofs tending to establish guilt. *See Angel v. Overburg*, 682 F.2d 605, 608 (6th Cir. 1982) (*en banc*). "When a petitioner makes a claim of prosecutorial misconduct, 'the touchstone of due process analysis ... is the fairness of the trial, not the culpability of the prosecutor.'" *Serra*, 4 F.3d at 1355 (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).

"There is no general constitutional right to discovery in a criminal case." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). However, exculpatory evidence must be disclosed by the prosecution. It is well settled that, under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the prosecution must disclose any evidence it has in its possession or of which it is aware which is both

favorable to the accused and material to guilt or punishment. A defendant does not have to make a specific request for *Brady* evidence before the government has an obligation to disclose favorable evidence. *See United States v. Agurs*, 427 U.S. 97 (1976). As the Court stated in *Kyles v. Whitley*, 514 U.S. 419 (1995), the obligation to disclose exculpatory evidence is required even absent a defense request when suppression of the evidence would be "of sufficient significance to result in the denial of the defendant's right to a fair trial." *Id.* at 1565, citing *Agars* at 108.

In *Brady*, the petitioner and a companion, Bobit, were found guilty of murder and sentenced to death. At his trial, petitioner maintained that although he participated in the crime he did not commit the murder. Bobit had earlier confessed to the murder. However, the actual confession was withheld from defense counsel despite defense counsel's request to examine Bobit's extrajudicial statements. The Supreme Court affirmed the Court of Appeals' order granting a new trial on the issue of punishment. The court stated:

> We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

*Id.* at 87. The Court defined materiality in *United States v. Bagley*, 473 U.S. 667 (1985):

> The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.

*Id.* at 682. *See also United States v. Bencs*, 28 F.3d 555 (6th Cir 1994); *United States v. Mullins*, 22 F.3d 1365 (6th Cir. 1994). "A 'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Kyles* at 1566, citing *Bagley* at 678.

The prosecutor does not have to disclose exculpatory evidence which is otherwise available to the defense. *United States v. Clark*, 928 F.2d 733 (6th Cir. 1991) ("No *Brady* violation exists where a defendant 'knew or should have known the essential facts permitting him to take advantage of any exculpatory information,' *United States v. Grossman*, 843 F.2d 78, 85 (2d Cir. 1988), *cert. denied*, 488 U.S. 1040, 109 S. Ct. 864, 102 L.Ed.2d 988 (1989), or where the evidence is available to defendant from another source.")

Petitioner has not shown that video and audiotape of the police vehicles or the 911 call were exculpatory. Petitioner has claimed that the Cass County Sheriff's Department destroyed the video and audio recordings. Where the evidence is potentially exculpatory, its destruction does not violate due process, unless the petitioner can establish bad faith. *Killian v. United States*, 368 U.S. 231, 242 (1961); *California v. Trombetta*, 467 U.S. 479, 487 (1984). Petitioner has asserted nothing to establish that the destroyed evidence was exculpatory. Petitioner's prosecutorial misconduct claim fails. Moreover, Petitioner has failed to show that the decision of the Michigan courts in denying this claim was unreasonable.

Petitioner argues that the sentence that he received violated his Eighth Amendment rights because he was sentenced for acts that he committed while sleep walking. Petitioner first raised this claim in the Michigan Supreme Court when appealing the denial of his motion for relief from judgment. Because Petitioner never fairly presented this claim at every state court level, Petitioner did not exhaust this claim. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Petitioner no longer has any state remedies left that he can pursue.

Before the court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan*, 526 U.S. at 842. Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair

opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995) and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *Duncan*, 513 U.S. at 365-66; *Silverburg v. Evitts*, 993 F.2d 124, 126 (6th Cir. 1993); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

Presentation of an issue for the first time on discretionary review to the state supreme court does not fulfill the requirement of "fair presentation." *Castille v. Peoples*, 489 U.S. 346, 351 (1989). Applying *Castille*, the Sixth Circuit holds that a habeas petitioner does not comply with the exhaustion requirement when he fails to raise a claim in the state court of appeals, but raises it for the first time on discretionary appeal to the state's highest court. *See Dunbar v. Pitcher*, No. 98-2068, 2000 WL 179026, at *1 (6th Cir. Feb. 9, 2000); *Miller v. Parker*, No. 99-5007, 1999 WL 1282436, at *2 (Dec. 27, 1999); *Troutman v. Turner*, No. 95-3597, 1995 WL 728182, at *2 (6th Cir. Dec. 7, 1995); *accord Parkhurst v. Shillinger*, 128 F.3d 1366, 1368-70 (10th Cir. 1997); *Ellman v. Davis*, 42 F.3d 144, 148 (2d Cir. 1994); *Cruz v. Warden of Dwight Corr. Ctr.*, 907 F.2d 665, 669 (7th Cir. 1990). Unless the state supreme court actually grants leave to appeal and reviews the issue, it remains unexhausted in the state courts. Petitioner's application for leave to appeal was denied, and, thus, as Petitioner concedes, this issue was never reviewed.

In order to overcome a procedural default in the state court, a petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual

prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52. The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

    Petitioner cannot show cause or prejudice for his failure to fairly present this claim in the state courts. First, Petitioner cannot establish cause because he has only himself to blame for not including this claim in his motion for relief from judgment in the state courts. Second, Petitioner cannot show any prejudice. In *Lockyer v. Andrade*, 538 U.S. 63 (2003), the United States Supreme Court stated that the law regarding proportionality was not clearly established for purposes of a habeas analysis under § 2254(d)(1) except that a gross proportionality principle is applicable to a sentence for a term of years. *Id*. at 71. However, "in determining whether a particular sentence for a term of years can violate the Eighth Amendment, we have not established a clear or consistent path for courts to follow." *Id.* The Supreme Court stated:

> Our cases exhibit a lack of clarity regarding what factors may indicate gross disproportionality. In *Solem [v. Helm,* 463 U.S. 277 (1983)] (the case upon which Andrade relies most heavily), we stated: "it is clear that a 25-year sentence generally is more severe than a 15-year sentence, but in most cases it would be difficult to decide that the former violates the Eighth Amendment while the latter does not." And in *Harmelin [v. Michigan,* 501 U.S. 277 (1983)], both Justice KENNEDY and Justice SCALIA repeatedly emphasized this lack of clarity: that "*Solem* was scarcely the expression of clear . . . constitutional law," that in "adher[ing] to the narrow proportionality principle . . . our proportionality decisions have not been clear or

> consistent in all respects," that we "lack clear objective standards to distinguish between sentences for different terms of years," and that the "precise contours" of the proportionality principle "are unclear."
>
> Thus, in this case, the only relevant clearly established law amenable to the "contrary to" or "unreasonable application of" framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the "exceedingly rare" and "extreme' case.

*Id.* at 72-73 (citations omitted). The Supreme Court further noted that state legislatures have "broad discretion to fashion sentences that fit within the scope of proportionality principle - - the 'precise contours' of which 'are unclear.'" *Id.* at 76.

Moreover, the Sixth Circuit has concluded that a sentence that falls within the maximum penalty authorized by statute "generally does not constitute cruel and unusual punishment." *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). Petitioner has not shown that his Eighth Amendment rights were violated by the sentence that he received. Accordingly, Petitioner has shown no prejudice to overcome his procedural default. Moreover, Petitioner has not established that he was actually innocent of the crimes.

Petitioner has filed a separate motion seeking an immediate release from prison entitled "Petitioner's Motion for Bail" (ECF No. 30). Petitioner argues that he should receive bail because the trial court improperly admitted evidence that a "crack pipe" was found on his person at the time he committed the crimes. The Michigan Court of Appeals concluded that the crack pipe was relevant to explain Petitioner's odd criminal behavior. Petitioner asserts that he received ineffective assistance of counsel because his trial counsel did not feel that the toxicology report, which showed no cocaine in Petitioner's system, was relevant evidence. Petitioner claims that his

father is battling colon cancer and he needs to be released to help his mother and father during his father's illness. Petitioner asserts that he is currently prohibited from visiting his dying father while he is confined in prison. Petitioner requests that bail be set or alternatively that his custody level be reduced to allow electronic monitoring.

In *Dotson v. Clark*, 900 F.2d 77 (6th Cir. 1990), the Court of Appeals recognized situations in which the district court may grant bail pending a decision on the merits of a habeas corpus petition. The *Dotson* court held that the power to release petitioner on bond must be exercised sparingly and only in the presence of exceptional circumstances. 900 F.2d at 79. Thus, the release of a habeas petitioner before adjudication of the petition is available in this circuit, but only in exceptional circumstances.

Under *Dotson*, the prisoner seeking release on bond "must be able to show not only a substantial claim of law based on the facts surrounding the petition but also the existence of some 'circumstance making the [motion for bail] exceptional and deserving of special treatment in the interests of justice.'" 900 F.2d at 79 (quoting *Aronson v. May*, 83 S. Ct. 3, 5 (1964) (Douglas, J., in chambers)). The habeas petitioner, who is incarcerated under a presumptively valid criminal conviction, is on a much weaker footing than a pretrial accused or even a convicted defendant waiting appeal. *See Ostrer v. United States*, 584 F.2d 594, 599 (2d Cir. 1978).

Applying the two-prong test in *Dotson*, this court finds neither a substantial claim on the merits of the petition nor exceptional circumstances deserving special treatment in the interest of justice. For the reasons stated, the petition lacks merit. Petitioner has failed to present any issues that could justify success on the merits in this habeas petition. For that reason, Petitioner's motion for bond must be denied.

IT IS ORDERED that petitioner's motion for bond (ECF No. 30) is DENIED.

IT IS FURTHER ORDERED that the Petition is Dismissed.

In addition, if Petitioner should choose to appeal this action, a certificate of appealability is denied as to each issue raised by the Petitioner in this application for habeas corpus relief.  Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  The undersigned concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong.  Therefore, the court will deny Petitioner a certificate of appealability.

A Judgment consistent with this Memorandum and Order will be entered.

SO ORDERED.


Dated:  2/17/2016              　　　　　　　　　*/s/ R. Allan Edgar*　　　　
　　　　　　　　　　　　　　　　　　R. ALLAN EDGAR
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE